Aaboit Gr. WmDHEiM, J.
The defendant is charged here with disorderly conduct under subdivision 6 of section 240.20 of the Penal Law. The information, made by a Sergeant of the Nyack police force, alleges in substance that defendant on September 15,1968, within intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, congregated with other persons on a public street and refused to obey a lawful order of the said Police Sergeant to disperse.
At the trial of this case the People produced two witnesses, both police officers. The first was the informant who testified that shortly after midnight on September 15, 1968, he and a fellow officer were dispatched to Franklin Street, in the Village of Nyack, where certain disorders were taking place in the street. Some windows had been broken and a number of people were on the streets, a large number of whom had congregated at one location in the vicinity of a certain tavern. The sergeant further testified that he approached the group in front of this tavern and ordered all persons including the defendants to move along, or words to that effect. When he gave this direction to the defendant, the defendant replied, according to the witnesses’ testimony, “ Who the hell are you to tell me what to do.” The Sergeant then immediately arrested the defendant on a charge of disorderly conduct which is the subject of this trial. The other witness produced by the People was the Patrolman who accompanied the Sergeant and he gave substantially the same testimony regarding the conditions existing on Franklin Street and the exchange between the Sergeant and defendant.
The defense produced three witnesses. Both the defendant and sister testified that the sister had been involved in altercation on Second Avenue earlier on the evening of September 14, 1968, in which the sister was injured. At that location the Chief of Police, who also testified, offered the defendant and *457 his sister a ride to the police station so that they could lodge a complaint but defendant and his sister refused his offer. Instead, they walked to the other side of town, passing the police station where they claim they wanted to file a complaint, and went on farther to Franklin Street where a number of people had assembled, at least one window had been broken, and a number of police had been called to the scene. The defendant and his sister both testified that as they walked from Second Avenue to Franklin Street a group of at least 20 people were walking behind them and that those people included a number of the persons who had been in Second Avenue where the sister had been injured. "When they arrived at Franklin Street they stood in the vicinity of Chick and Charlie’s Bar, leaning up against an automobile. The sister testified that there were 50 to 70 people in front of this bar and that the crowd extended from the entrance to the bar to the point where defendant and his sister stood at the automobile. The persons in the crowd included persons known to the defendant, some of whom had been apparently in the group which followed them from Second Avenue. Both the defendant and his sister testified that when they were asked to disperse by the police officer the defendant replied ‘ ‘ why should I move when all these other people are here.” It appears that when the order was given by the officer, according to the defendant’s testimony, the other persons began leaving the area.
People v. Kern (51 Misc 2d 209 [Police Justice Ct., Vil. of Rockville Centre, 1966]), cited by the defendant’s attorney, was a case in which the Police Justice found that defendant’s refusal to leave the urban renewal office of that village was a proper basis for a conviction for disorderly conduct under the village ordinance which was in its language identical with subdivision 2 of section 722 of the former Penal Law of the State of New York. This is not the provision involved in the instant case and therefore the Kern case is not in point. The holding of the Kern case was that an arbitrary refusal to leave a public office is not constitutionally protected and that such conduct would constitute disorderly conduct. In the Kern case, the court analyzed the decision of the United States Supreme Court in Brown v. Louisiana (383 U. S. 131), where the United States Suprem9e Court reversed the conviction of the defendants on the ground that their presence in a library was protected by the constitutional right of assembly and that the arbitrary demand by the Sheriff that they leave was nothing but an attempt by the Sheriff to perpetuate the system of segregation in the library. In that case Mr. Justice White noted that if the *458 defendants were engaging in some conduct which was other than the normal use of a public library, he would find that they could be guilty of disorderly conduct. It should be noted that in the present case there is no parallel situation, in that defendant was on a public street where numbers of persons had congregated and where there had been some civil disorder. The direction of the police officer was not arbitrary, obviously directed at violating some constitutional or civil right, and in that respect the facts in Kern and in Brown are substantially different.
In the case of People v. Crayton (55 Misc 2d 213 [App. Term, 1st Dept., Oct. 23, 1967]) the Appellate Term affirmed the conviction of the defendants who had been charged with obstructing the hallway leading to the office of the Mayor of the City of New York. This case is cited by defendant as authority for the contention that a defendant must be given sufficient time to comply with the order of the police and that defendant here was not afforded such time. That case involved a violation of section 1851 of the former Penal Law, the charge of resisting arrest, and did not involve a charge of disorderly conduct. The court however noted that when a police officer does make an arrest, the act of going limp does constitute resisting arrest and the contention of the defendants that this was not a resisting of the arrest was rejected. The court noted (p. 216) that it is “ the duty of an officer to bring a violation of the law to a court of justice as promptly as possible.” The reasoning of the court was the act of going limp is as much a resisting of the arrest as would be a refusal stated verbally. Obviously the conditions under which the officer acted were a guiding factor. Similarly, in the instant case, it would have been imprudent for an officer on the street during a civil disorder to engage in a debate with a person ordered to disperse, as to why such an order was given.
The case of People v. Carcel (3 N Y 2d 327 [1957]) is also cited by defendant in support of his claim that there was no congregating in the present case within the meaning of the statute. In the Carcel case it is clear from the opinion that the defendants were only two in number and that it was undisputed that they were moving around to avoid other persons in the area of the entrance to the United Nations Building. On the other hand, in the instant case defendant’s sister testified that there were more than 50 people in front of the tavern and that they extended from the door of the tavern to where defendant and the sister were standing. Both the defendant and his sister testified that there were persons in the group whom they knew *459 and who had been with them on Second Avenue at the time of the earlier disturbance and who had followed behind them to Franklin Street. Both defendant and his sister were aware that these people were following them and, in fact, defendant stated that he did not enter the police station because he felt that they would congregate in front of the police station and stand a good chance of being arrested there.
Therefore, I find that defendant was congregating with other persons in front of the tavern where the arrest took place.
I also find that the defendant, in congregating with others on a public street, refused to disperse after the officer had given a lawful order to do so. Moreover, in view of the fact that defendant refused an offer to go to the police station, where he claims he wanted to go to make a complaint, and in light of the fact that he proceeded to walk beyond the police station into an area of the street where conditions were in some state of unrest where he proceeded to refuse to obey an order to disperse, defendant was guilty of recklessly creating a risk of causing public inconvenience, annoyance or alarm and he thus violated section 240.20 of the Penal Law of the State of New York.
I find defendant guilty as charged in the amended information and defendant is directed to appear for sentencing on January 15, 1969.